IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TOURI EUGENE ABBOTT and PHILLIP'S AUTO RECYCLING & SALVAGE, INC., | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:20-CV-776-WKW |
| | ) | [WO] |
| MEGA TRUCKING, LLC, MUL-TY- VIBES, INC., and PATRICE LUMUMBA MORGAN, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This lawsuit arises out of a collision between two tractor-trailers. On August 24, 2020, Patrice Lumumba Morgan (Morgan) was operating a tractor-trailer during the scope of his work for Mega Trucking, LLC (Mega). Traveling south on a U.S. highway in Pike County, Alabama, Morgan turned left across the northbound lanes of travel, and a northbound tractor-trailer, operated by Touri Abbott (Abbott), crashed into Morgan's trailer.

Alleging that Morgan did not yield the right of way to Abbott and seeking recovery for personal injuries and property damage, Abbott and the owner of his tractor-trailer (Phillip's Auto Recycling & Salvage, Inc.) sued Morgan and the

owners of his tractor-trailer (Mega and Mul-Ty Vibes, Inc.) under multiple theories of negligence and wantonness.

Before the court are Mega's motion for summary judgment (Doc. # 54)—which Mul-Ty Vibes, Inc. (Mul-Ty) joins (Doc. # 59)—and Morgan's motion for partial summary judgment (Doc. # 60).  The motions are fully briefed.  Based upon careful consideration of the evidence, the applicable law, and the arguments of counsel, Mega's and Mul-Ty's motions for summary judgment (Docs. # 54, 59) will be granted in part and denied in part, and Morgan's motion for partial summary judgment (Doc. # 60) will be denied.

## I.  JURISDICTION AND VENUE

Subject matter jurisdiction is proper under 28 U.S.C. § 1332.  Personal jurisdiction and venue are uncontested.

## II.  BACKGROUND

Abbott and Morgan earn their living as commercial truck drivers.  At the time of the collision, the relationship among Morgan, Mega, and Mul-Ty was interrelated: Morgan was working for Mega; Mega owned the trailer but leased the commercial motor vehicle (a 2007 Freightliner) from Mul-Ty; and Mul-Ty's sole shareholder was Morgan.  (Doc. # 55-1 at 89[1]; Doc. # 68-3.)  As for Plaintiffs, Abbott was driving a 2012 Peterbilt tractor-trailer, owned by Phillip's Auto Recycling & Salvage, Inc.

---

[1] Document # 55-1 is the transcript of Morgan's deposition.  Where a deposition is cited, the cited pages refer to the deposition pages, and not to the pagination assigned in CM/ECF.

The collision of the tractor-trailers occurred on August 24, 2020, at noon, on a four-lane U.S. highway in Pike County, Alabama.  Rain was drizzling, and the roadways were wet.  Morgan was transporting an empty, forty-eight-foot flatbed trailer and traveling south on Highway 231. (Doc. # 55-1 at 101, 111–12, 115, 136–37; Doc. # 58-1 at 70.)  He was stopped in the turn lane, preparing to turn left across the two northbound lanes of Highway 231 and onto county road 7723 to pick up a load from a lumber company.  This section of Highway 231 was "relatively flat" with "good visibility" of approaching traffic in the northbound lanes.  (Doc. # 58-1 at 51, 53.)  Morgan saw Abbott's tractor-trailer traveling northbound on Highway 231 and thought that, with a "good press on the gas pedal," he had enough time to safely turn and clear the northbound highway lanes.  (Doc. # 55-1 at 105.)  Morgan testified:  "Mr. Abbott [was] far enough away where he would have seen me and possibly slowed down, but even if he didn't slow down, I surely would have made that.  There shouldn't be a reason why I wouldn't make that turn."  (Doc. # 55-1 at 103.)  However, as Morgan was crossing the northbound lanes, he had a "panic attack" because he could see that Abbott's tractor-trailer was "not slowing down" and was "beaming towards" him.  (Doc. # 55-1 at 110.)

Abbott was hauling 78,000 pounds of crushed vehicles. Abbott's cruise control was set on sixty-three miles per hour, two miles under the posted speed limit.  (Doc. # 61-1 at 63, 81, 99.)  He estimated that he was about fifty yards from

3

Morgan's truck when Morgan started to turn left.  (Doc. # 61-1 at 72–73, 77.)  Abbott tried to slow down—by braking, downshifting, and deploying his Jake Brake—and then swerved into the left lane to try to avert a collision.  (Doc. # 61-1 at 97–99.)  After swerving to the left, just prior to impact, Abbott was eye-to-eye with Morgan and could see that Morgan had a "phone in his hand."  (Doc. # 61-1 at 79, 80–81.)  Abbott then collided with the trailer, "right behind" the rear axle of Morgan's truck, and overturned.  (Doc. # 61-1 at 82, 90.)  The officer who investigated the accident—Alabama State Trooper Michael Wallace—did not issue a citation to either Morgan or Abbott.  (Doc. # 58-1 at 62.)

At the time of the accident, Morgan had worked for Mega since December 6, 2019 (*i.e.*, about nine months).  (*See* Doc. # 55-1 at 33; Doc. # 59-2 at 2.)  Before hiring Morgan, Mega administered a road test to Morgan, which he passed, (Doc. # 55-7; Doc. # 71 at 5 (¶ 12)), and examined his motor vehicle record (MVR) and pre-employment screening program (PSP) record.  (Doc. # 55-4; Doc. # 55-5.)

 The MVR, which is dated December 4, 2019, documented no violations or convictions, no failures to appear, no accidents, and no suspensions or revocations of Morgan's commercial driver's license (CDL) for the preceding three years.  (Doc. # 55-4 at 2; Doc. # 71 at 4 (¶ 8).)  The PSP, however, noted ten citations in the preceding three years for inoperative headlamps (on three separate occasions), for improper tire tread depth, for failing to secure brake hose/tubing, for needed repair

4

and maintenance of parts and accessories, for failing to secure a load, for not being adequately trained in the operation of the automatic on-board recording device, and once for driving beyond the eight-hour limit.  (Doc. # 55-5; Doc. # 71 at 4 (¶ 10).) The latter two violations are categorized as hours-of-service compliance violations, and the rest are categorized as vehicle maintenance violations.  (Doc. # 55-5 at 3.) Morgan had no violations in the categories of driver fitness, unsafe driving, and drug/alcohol.  (Doc. # 55-5 at 3.)

At his deposition, Morgan testified that he had been ticketed for additional violations prior to his employment with Mega.  He received a citation in 2019 in Atlanta for driving in the high-occupancy vehicle (HOV) lane, and another in 2018 in Virginia for "[f]ailure to obey [a] high sign."[2]  (Doc. # 55-1 at 42–45.)  The 2019 Atlanta citation was dismissed.  (Doc. # 55-6.)   In addition, in his employment application with Mega, Morgan indicated that he had a crash in November 2019 in Philadelphia.  (Doc. # 71-3.)  He listed the "date of accident" as "11-12-19" and the "location of accident" as "Philadelphia, PA."  (Doc. # 71-3.)  While Morgan reported there were no fatalities or personal injuries, the handwritten description of the "nature of accident" is illegible.  (Doc. # 71-3.)  The MVR, dated December 4, 2019, does not include the November 2019 accident in Philadelphia.  (Doc. # 55-4 at 2.)

---

[2] Morgan explained that he was transporting a "high load," meaning a load higher than fourteen feet, and he approached a bridge that was thirteen-feet, six-inches tall.  He "couldn't back up or turn around," and traffic had to be cleared "to get [him] out of there."  (Doc. # 55-1 at 44–45.)

Morgan also testified that, after beginning his employment with Mega, he received a ticket in Florida in February 2020 for "failure to drive in a single lane." As Morgan described it, he was transporting a wide load on a Florida turnpike in the far-right lane, but his "load clipped the tollbooth." (Doc. # 55-1 at 40.) Morgan retained an attorney, and the Florida "ticket was dismissed." (Doc. # 55-1 at 40, 41.) He also testified that he informed Mega about this citation, as well as anytime he had a traffic violation. Morgan also testified that he received tickets for overweight loads "all the time." (Doc. # 55-1 at 41–43.)

Prior to working for Mega, Morgan had been employed since 2012 as a commercial truck driver, except for six to eight months when he worked in an unrelated field. (Doc. # 55-1 at 20–33; Doc. # 71-1.) Morgan earned his CDL in 2012, after successfully completing a trucking school in Florida. Morgan also has obtained tanker and hazmat endorsements to his CDL. (Doc. # 55-1 at 19.) His CDL never has been suspended. (Doc. # 55-1, at 47–48; Doc. # 71 at 5 (¶ 13).)

The governing Complaint alleges that Morgan caused the accident by failing to yield the right of way to Abbott. (Doc. # 33 ¶¶ 20, 22.) The Complaint brings these claims: negligence and wantonness against Morgan (Counts 1 and 2); negligent/wanton hiring, retention, training, supervision, and failure to implement policies and procedures against Mega and Mul-Ty (Counts 3 and 4); and combined and concurring negligence against all Defendants (Count 5).

6

### III.  STANDARD OF REVIEW

To succeed on a motion for summary judgment, the moving party must show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court views the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party.  *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for the motion."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  This responsibility includes identifying the parts of the record illustrating the absence of a genuine dispute of material fact.  *Id.*  Alternatively, a movant without a trial burden of production can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact.  Fed. R. Civ. P. 56(c)(1)(B); *see also* Fed. R. Civ. P. 56 advisory committee note ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials.  . . .  [A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.").

If the movant meets its burden, the burden shifts to the nonmoving party to establish—with evidence beyond the pleadings—that a genuine dispute material to each of its claims for relief exists.  *Celotex Corp.*, 477 U.S. at 324.  A genuine dispute

of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

## IV.  DISCUSSION

Defendants seek full or partial summary judgment.  Morgan moves for partial summary judgment on the wantonness claim in Count 2.[3]  Mega and Mul-Ty move for summary judgment on the claims for negligent/wanton, hiring, training, supervision, retention, and failure to implement policies and procedures in Count 3 (against Mega) and in Count 4 (against Mul-Ty).  All Defendants move for summary judgment on the claim alleging combined and concurring negligence (Count 5).

### A.    <u>Wantonness Against Morgan (Count 1)</u>

Morgan advances two arguments for summary judgment on the wantonness claim.  First, he contends that the circumstances of the crash—that Abbott collided with Morgan's flatbed trailer while Morgan was turning left and crossing the highway—reflects an error in judgment and does not show a "degree of consciousness on Morgan's part that injury was likely to result from his action." (Doc. # 61 at 12–13.)  Second, citing the presumption established in *Ex parte Essary*, 992 So. 2d 5 (Ala. 2007), Morgan contends that the wantonness claim fails because "any operation of Morgan's vehicle that allegedly endangered Abbott would have

---

[3] Morgan does not move for summary judgment on the negligence claim in Count 1.

been equally dangerous to Morgan himself." (Doc. # 61 at 14.) Plaintiffs counter that, given Morgan's experience as a tractor-trailer operator, the circumstances known to him before he turned left into Abbott's path create a jury question on wantonness and that the *Essary* presumption does not apply. (Doc. # 71 at 81–12.) Plaintiffs have the prevailing argument.

Under Alabama law, wantonness is "the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Bozeman v. Cent. Bank of the South*, 646 So. 2d 601 (Ala. 1994). Although "it is not essential that the actor should have entertained a specific design or intent to injure the plaintiff," the actor must have been "conscious that injury will likely or probably result from his actions." *Ex parte Essary*, 992 So. 2d at 9 (citation and internal quotation marks omitted); *see also* Ala. Code § 6-11-20(b)(3) (defining "wantonness" as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others"). In other words, "it is not necessary that the actor know that a person is within the zone made dangerous by his conduct; it is enough that he knows that a strong possibility exists that others may rightfully come within that zone." *Ex parte Essary*, 992 So. 2d at 9 (citation omitted)). And "[k]nowledge need not be proven directly but may be inferred from the facts of the case." *Klaber By & Through Klaber v. Elliott*, 533 So. 2d 576, 579 (Ala. 1988).

Contrary to Defendants' argument, the evidence shows more than an error in judgment.   Construed in the light most favorable to Plaintiffs, the evidence reasonably infers that, to make the left turn, Morgan floored the gas pedal of his commercial-freight truck, fastened to a forty-eight-foot trailer, knowing it was risky to try to clear the highway before the northbound tractor-trailer intersected his trajectory.  (Doc. # 55-1 at 105, 111–12, 136–37.)  The wet road conditions added to the dangerousness of Morgan's decision.  (Doc. # 55-1 at 10; Doc. # 58-1 at 70.) Morgan's own words reasonably suggest that Morgan knew there was a strong possibility he was creating a zone of danger for the northbound tractor-trailer: "Mr. Abbott [was] far enough away where he would have seen me and possibly slowed down, but even if he didn't slow down, I surely would have made that."  (Doc. # 55-1 at 102, 103.)  He consciously was counting on Abbott seeing him and slowing down, even if he simultaneously hoped he could make it without Abbott's assistance. Panic then set in when Morgan realized that Abbott was "not slowing down."  (Doc. # 55-1 at 110.)  The zone of danger then became real.[4]

"What constitutes wanton misconduct depends on the facts presented in each particular case."  *Ex parte Anderson*, 682 So. 2d 467, 470 (Ala. 1996) (citation

---

[4] While Abbott testified that Morgan was holding a cell phone in his hand immediately before impact, Abbott does not assimilate that fact into his analyses of the wantonness claim; hence, neither will the court for purposes of resolving the pending summary judgment motion.  It is therefore not necessary to address Defendants' argument that Morgan abandoned reliance of this fact (Doc. # 81 at 2 n.1) because, even without it, Plaintiffs clearly have presented a jury issue on wantonness.

omitted).  The facts of the cases upon which Defendants rely are not sufficiently analogous to the facts of this case.  In *Ex parte Anderson*, 682 So. 2d at 470, the defendant, at most, was "negligent in turning left while her view of the oncoming traffic was blocked."  Similarly, in *Dorman v. Jackson*, 623 So. 2d 1056, 1058 (Ala. 1993), the defendant "failed to see the oncoming car," even though she slowed down before crossing the northbound lanes of traffic.  And in *Wilson v. Cuevas*, 420 So. 2d 62, 64–65 (Ala. 1982), the at-fault driver testified that he "was in a hurry" and did not notice the oncoming vehicle.  In each case, the defendants did not see the approaching vehicles.  While the defendants' negligence was in play, there was insufficient evidence that the drivers acted consciously when they drove into the path of vehicles they did not know were there; the defendants lacked adequate "knowledge of the danger present."  *Wilson*, 420 So. 2d at 65.

Here, Morgan had an unobstructed view of Abbott's tractor-trailer, sized up the oncoming traffic, and made a calculated decision to cross and hope for the best (the best being that Abbott would see him and slow down).  (Doc. # 55-1 at 102, 103.)  Whether an experienced commercial truck driver like Morgan, armed with this knowledge, was "conscious that injury" to Abbott would "likely or probably result from his actions" is for the jury.  *Ex parte Essary*, 992 So. 2d at 12.

Next, Defendants point to *Ex parte Essary*, where the Alabama Supreme Court held that a driver—who had executed a "rolling stop" at an intersection's stop

11

sign to try to beat the traffic—did not behave wantonly.  *See* 992 So. 2d at 12–13. The court recognized a rebuttable presumption that, where the risk of injury to the defendant is "as real as any risk of injury to the plaintiffs," courts "do not expect an individual to engage in self-destructive behavior."  *Id.* at 12.  In *Essary*, the plaintiff did not rebut the presumption by presenting evidence of "impaired judgment" or conduct "consistent with disregard of instincts of safety and self-preservation."  *Id.*

Here, the proffered presumption is that Morgan would not have tried to beat the traffic when crossing the northbound lanes of the highway if he thought he would be injured in a collision.  The flaw in this proffered presumption is that the evidence reasonably infers that the risks were not equal between Morgan and Abbott.  The risk of physical injury to Morgan reduced with each tire rotation that pushed the cab of his tractor-truck across the lanes of the northbound highway and out of harm's way of a direct hit to his cab's passenger side; however, the risk of physical injury remained grave for Abbott whether he collided with the tractor-truck or with Mega's attached flatbed trailer.  As recognized by a neighboring district court, "[t]he risk of injury to [the defendant] from another vehicle colliding with the trailer of his truck was certainly not as great as the risk of injury to the driver of that other vehicle." *McCutchen v. Valley Home, Inc.*, 100 F. Supp. 3d 1235, 1240 (N.D. Ala. 2015).  The *Essary* presumption against self-destructive behavior is not fitting on the summary judgment facts.  Morgan's wantonness remains a fact question for the jury to decide.

**B.** **Claims for Negligent/Wanton Hiring, Training, Supervision, Retention, and Failure to Implement Policies and Procedures Against Mega & Mul-Ty (Counts 3 and 4)**

Count 3 combines claims for negligence and wantonness against Mega for its hiring, training, supervision, and retention of Morgan and for failing to "implement policies and procedures" for the safe operation of tractor-trailers.  (Doc. # 33 at 6–7.)  Count 4 alleges the same, but against Mul-Ty.  (Doc. # 33 at 7–8.)

### 1.   *Abandoned Claims*

Defendants move for summary judgment on Counts 3 and 4 in their totality. Plaintiffs' brief, however, does not address Defendants' arguments on the claims against Mega and Mul-Ty (1) for *wanton* hiring, training, supervision, and retention and (2) for negligent and wanton failure to implement policies and procedures.  (Doc. # 56 at 7–13; Doc. # 59 (Mul-Ty's joinder in Mega's arguments).)  For example, Mega represents that it "has been unable to locate any Alabama caselaw addressing whether a cause of action exists for a trucking company negligently or wantonly failing to adopt or implement policies or procedures" and argues that "to the extent such a claim is contained in Count III, it fails as being nonexistent under Alabama law."  (Doc. # 56 at 7 n.5.)  Plaintiffs have not responded to this argument, and the argument has merit.  *See, e.g.*, *Harris by & through Harris v. City of Gurley*, No. CV-09-S-2108-NE, 2010 WL 11613800, at *19 (N.D. Ala. Mar. 26, 2010)

(dismissing claims for negligent failure to train employees on policies and procedures and finding "no authority to support the proposition that Alabama recognizes an affirmative cause of action for noncompliance with ministerial duties and checklists").

Because "grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned," *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995), summary judgment will be granted on the claims in Counts 3 and 4 for wanton hiring, training, supervision, and retention and for negligent and wanton implementation of policies and procedures.

**2.**      ***Remaining Claims for Negligent Hiring, Training, Supervision, and Retention Against Mega & Mul-Ty (Counts 3 and 4)***

Defendants argue that Plaintiffs' claims that Mega and Mul-Ty negligently hired, trained, supervised, and retained Morgan cannot survive summary judgment because there is insufficient evidence that Morgan was an incompetent driver. (Doc. # 56 at 7; Doc. # 59.) Defendants also argue that Plaintiffs have not shown that they knew or should have known of Morgan's alleged incompetence. (Doc. # 56 at 10; Doc. # 59.) Plaintiffs assert that Morgan's driving record and citations, in conjunction with his reckless and willful decision "to turn into oncoming traffic with a forty-foot trailer attached to his tractor," are evidence of his incompetence as a driver and that Mega knew about his incompetence. (Doc. # 71 at 13–14.) Plaintiffs'

14

claims that Mega and Mul-Ty negligently hired, trained, supervised, and retained Morgan survive summary judgment.[5]

Under Alabama law, claims for negligent hiring, negligent supervision, negligent training, and negligent retention require proof that "the employer knew, or in the exercise of ordinary care should have known, that its employee was incompetent." *Britt v. USA Truck, Inc.*, No. 2:06-CV-868-ID, 2007 WL 4554027, at *4 (M.D. Ala. Dec. 20, 2007) (negligent hiring, negligent supervision, and negligent retention); *see also Southland Bank v. A & A Drywall Supply Co.*, 21 So. 3d 1196, 1214–15 (Ala. 2008) (negligent training and negligent supervision); *Brown v. Vanity Fair Mills, Inc.*, 277 So. 2d 893, 895 (Ala. 1973) (negligent hiring and negligent retention); *Sanders v. Shoe Show, Inc.,* 778 So. 2d 820, 824 (Ala. Civ. App. 2000) (negligent hiring and negligent supervision).

The Alabama Supreme Court defines "incompetence" as the "state or fact of being unable or unqualified to do something." *Halford v. Alamo Rent-A-Car, LLC*, 921 So. 2d 409, 415 (Ala. 2005) (citation and internal quotation marks omitted). "Incompetency . . . connect[s] conjunctively with carelessness, indifference, heedlessness and recklessness." *Southland Bank*, 21 So. 3d at 1215 (citation and internal quotation marks omitted). Importantly, the Alabama Supreme Court

---

[5] Because Mega's and Mul-Ty's arguments do not differentiate among the claims for negligent hiring, negligent training, negligent supervision, and negligent retention, the court likewise will not parse the evidence as to each claim.

measures a driver's incompetence "by the driver's demonstrated ability (or inability) to properly drive a vehicle." *Halford*, 921 So. 2d at 413–14. For example, evidence of incompetence can include "previous acts of negligent or reckless driving, . . . previous accidents, or previous acts of driving while intoxicated." *Edwards v. Valentine*, 926 So. 2d 315, 322 (Ala. 2005) (alteration omitted) (quoting Restatement (Second) of Torts § 390 (1965)). However, an employee's "mistake or single act of negligence" does not establish incompetence, because even "the most competent may be negligent." *Southland Bank*, 21 So. 3d at 1217 (internal citations omitted).

Under Alabama law, a driver's competence is not always a jury issue. For example, in *Pryor v. Brown & Root USA, Inc.*, the driver of the vehicle had a suspended prosecution on a DUI charge and two speeding tickets during the ten years preceding the accident. *See* 674 So. 2d 45, 51–52 (Ala. 1995). The court found that this driving record was not "substantial evidence" that the driver "was incompetent." *Id.* at 52. Similarly, in *Wright v. McKenzie*, the court found that a tractor-trailer operator's two speeding tickets did not demonstrate the driver's incompetence.[6] 647 F. Supp. 2d 1293, 1299–1300 (M.D. Ala. 2009) (noting that "Alabama courts have generally held [two speeding tickets] to be insufficient to show a driver's incompetence"); *see also Day v. Williams*, 670 So. 2d 914, 916 (Ala. 1995) (concluding that a speeding ticket received about two years before the accident,

---

[6] The *Wright* opinion does not indicate the timeframe of the two tickets in relation to the date of the accident.

16

combined with "several tickets for driving without a license," did not show the driver's incompetence).  In another case, the court found that a professional tractor-trailer driver who had amassed "two moving violations" and "four minor accidents [one being a sideswipe incident and another involving hitting a parked vehicle]" during the "nine-plus years" he worked for his employer did "not amount, under the law, to incompetence." *Askew v. R & L Transfer, Inc.*, 676 F. Supp. 2d 1298, 1303 & n.3 (M.D. Ala. 2009).

In contrast, the Alabama Supreme Court held that competency was a question for the jury where the driver was convicted of "eleven moving violations" (which included eight speeding violations) "within approximately three years prior to the accident" at issue.  *Thompson v. Havard*, 235 So. 2d 853, 857 (Ala. 1970); *see also Halford*, 921 So. 2d at 413 (incorporating *Thompson* in its analysis of whether there was a jury issue regarding the incompetence of the driver at issue); *Laney v. Blackburn*, 144 So. 126, 126–28 (Ala. 1932) (holding that, in an action against a father for damages allegedly caused by his son's negligent operation of his car, testimony that in the last two years the son had four car wrecks, some of which were reported to the father, was admissible to show the father's knowledge of his son's incompetence).

Here, the facts on Morgan's side are that, at the time of the accident, he had graduated from a truck driving school, had obtained a CDL, had maintained his CDL

without suspension, passed a pre-employment driving test, and had driven a commercial tractor-trailer for about eight years. (Doc. # 55-7; Doc. # 71 at 5 (¶ 12); Doc. # 55-1, at 47–48; Doc. # 71 at 5 (¶ 13).

However, there are enough facts not on Morgan's side to create a genuine dispute of material fact as to Morgan's competency as a tractor-trailer driver. First, in the three years preceding the August 2020 collision, Morgan was involved in three incidents that potentially pertain to his driving skills. In 2018, Morgan hauled a load on his trailer that exceeded a Virginia roadway's height requirements. Although at his deposition Morgan tried to mitigate the circumstances of the violation, he does not dispute that he received a ticket for "[f]ailure to obey [a] high sign." (Doc. # 55-1 at 42–45.) In November 2019, Morgan had an accident, and the evidence does not rule out the possibility that the accident bears on Morgan's driving competency. (*See* Doc. # 71-3 (the handwritten description of the "nature of accident" is illegible).) In February 2020, while transporting a wide load on a Florida turnpike in the far-right lane, his "load clipped the tollbooth." (Doc. # 55-1 at 40.) While Morgan's attorney got the ticket dismissed (Doc. # 55-1 at 40, 41), Morgan admits that he misjudged his lane of travel.[7] (Doc. # 55-1 at 40.)

Second, Morgan habitually received tickets for driving with overweight loads. (Doc. # 55-1 at 43 (testifying that he received scale tickets "all the time").) An

---

[7] Defendants have not argued that evidence of Morgan's driving behavior underlying this ticket is inadmissible.

overweight load perils other drivers on the roads, for example, by making it more difficult for the driver of the overweight load to slow down or stop.  (Doc. # 75-2 at 93.)

Third, evidence suggests that Morgan got behind the wheel knowing that his tractor-trailer was not safe for the roadways.  Before the collision, beginning in September 2017, Morgan received eight vehicle maintenance violations.  (Doc. # 55-5.)  Viewed in the light most favorable to Plaintiffs, these violations, although not arising solely out of the operation of the tractor-trailer, suggest that Morgan did not maintain the tractor-trailer in a safe condition, potentially endangering the safety of fellow travelers on the roadways.[8]  For example, Morgan was cited for having inoperable headlamps and worn tread-depth on the tires and for failing to secure a load properly.  Morgan also was cited for driving beyond the eight-hour limit.  (Doc. # 55-5; Doc. # 71 at 4 (¶ 10).)  A reasonable jury could find that operating a tractor-trailer when it was not safely equipped or was not safely loaded and when the driver was fatigued all bear on a motorist's ability to drive safely.

Fourth, viewed in the light most favorable to Plaintiffs, the evidence creates a genuine dispute of material fact as to whether Morgan's driving behavior on the day

---

[8] Under the owner-operator agreement between Morgan and Mega, Morgan agreed to "provide and continuously maintain the Equipment in good, safe, serviceable and efficient operating condition in all respects at [his] expense," and he agreed to provide Mega "with continuous six (6) months maintenance records during the term" of the agreement.  (Doc. # 55-2 ¶ 8.)

of the collision was wanton.  A reasonable jury could find that his driving behavior on that day amounted to more than a "single act of *negligence*."  *Southland Bank*, 21 So. 3d at 1217 (emphasis added).

In sum, the facts about Morgan's competency to drive do not have a factually identical analog in the reported decisions from Alabama courts.  Still, Plaintiffs have presented enough evidence to create a genuine dispute for trial on this element.

Plaintiffs also have submitted evidence that Mega knew, "or in the exercise of ordinary care should have known," about Morgan's incompetency.  *Britt*, 2007 WL 4554027, at *4.  Before hiring Morgan, Mega reviewed Morgan's MVR and his PSP.  (Doc. # 55-4, 55-5.)  Also, while Morgan's 2019 accident was not listed on his MVR, Morgan reported it on his employment application with Mega.  (Doc. # 71-3.)  Morgan also testified that Mega was aware of the Florida incident when he clipped the tollbooth (Doc. # 55-1 at 40–41) and that he "immediately" called Mega whenever he was involved in "traffic incidences."  (Doc. # 55-1 at 42.)  He also testified that he would take a picture of any citations or tickets he received and would "forward [the picture] over to [Mega's] safety division."  (Doc. # 55-1 at 42.)  Also, the owner-operator agreement between Mega and Morgan suggests that Mega knew or should have known about the tractor-truck's maintenance deficiencies.  (*See* Doc. # 55-2 ¶ 8 (owner-operator agreement requiring that Morgan provide Mega "with continuous six (6) months maintenance records during the term" of the agreement).)

This evidence is sufficient to create a genuine dispute of material fact as to Mega's knowledge of Morgan's incompetency.

In addition, because Morgan was the sole shareholder of Mul-Ty, Mul-Ty is charged with knowledge of Morgan's alleged incompetency. *See CIT Grp./Equip. Fin., Inc. v. Roberts*, 885 So. 2d 185, 190 (Ala. Civ. App. 2003) ("[K]nowledge of an agent may be imputed to the principal."); *see also* Ala. Code § 8-2-8 ("As against a principal, both principal and agent are deemed to have notice of whatever either has notice of and ought in good faith and the exercise of ordinary care and diligence to communicate to the other."). Defendants have not argued otherwise.

Because there are genuine disputes of material fact on the elements Defendants challenge, summary judgment will be denied on the claims against Mega and Mul-Ty in Counts 3 and 4 for negligent hiring, supervision, training, and retention. Alternatively, the court has discretion, which it will exercise here, to permit these claims to go to trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Neither do we suggest that the . . . trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.").

## C.    Claim for Combined and Concurring Negligence Against All Defendants (Count 5)

Plaintiffs bring a separate count alleging that "[t]he negligence, wantonness, or other wrongful acts of all Defendants in this case combined and concurred to cause injuries and damages to Plaintiffs as alleged in this Complaint." (Doc. # 33 at 9 (Count 5).)  Defendants move for summary judgment on Count 5.

Before discussion of the legal principles governing combined and concurring acts under Alabama law, clarification of the nature of Count 5 is necessary.  Count 5 alleges a theory of causation, not a separate claim, for holding Defendants jointly liable for the negligence and wantonness alleged in Counts 1, 2, 3, and 4.  *See Springer v. Jefferson County*, 595 So. 2d 1381, 1383 (Ala. 1992) (explaining causation principles of "factual causation, legal or proximate causation, intervening or superseding intervening cause, and *concurrent tort-feasor liability*" (emphasis added)); *see also Wells v. Baity Bros. Trucking, Inc.*, No. 7:18-CV-1665-RDP, 2021 WL 9565488, at *6 (N.D. Ala. June 11, 2021) (finding that allegations that the defendants' negligence combined and concurred to cause harm to a plaintiff "d[id] not in of itself establish an independent cause of action" under Alabama law, but

rather was a "theory of liability").  Mega makes this point in its opening summary judgment brief.  (Doc. # 56 at 13 n.9.)

Mega, joined by its co-Defendants, argues that the theory for combined and concurring negligence fails because Plaintiffs cannot point to any act committed by Mega or Mul-Ty that combined with an act of Morgan to cause Plaintiffs' injuries. (Doc. # 56 at 13; Doc. # 59 at 1; Doc. # 61 at 16–17.)  Mega, for example, points to the testimony of Plaintiffs' transportation safety expert (Roger Allen), who said that the only act by Mega that "caused [Morgan] to make that left turn" into Abbott's path was Mega's "allowing him to drive."  (Doc. # 56 at 14 (citing Allen Dep. at 194).)  Plaintiffs respond that Mega's and Mul-Ty's negligence (in hiring, supervising, training, and retaining Morgan) combined with Morgan's negligent operation of the tractor-trailer to cause Plaintiffs' injuries.[9]  (Doc. # 71 at 14–18.)

The Alabama Supreme Court has held that where one is negligent and "this negligence concurs or coalesces with the negligence of another, and the two combine to produce an injury, each is liable for damages, and the negligence of each is considered the proximate cause of the injury producing the damages."  *Williams v. Woodman*, 424 So. 2d 611, 613 (Ala. 1982).  This legal principle is known under Alabama law as "concurrent tort-feasor liability."  *Springer*, 595 So. 2d at 1384. "Concurrent tort-feasor liability is simply the idea that an injury may have several

_____

[9] While Plaintiffs' arguments respond directly to Mega's arguments, Mul-Ty and Morgan adopt Mega's arguments.

concurrent proximate causes . . . ."  *Id.* (citation and internal quotation marks omitted); *Haddan v. Norfolk S. Ry. Co.*, No. 1190976, 2022 WL 333879, at *4 (Ala. Feb. 4, 2022) (accord).  "Alabama law is clear that . . . where the actions of two or more tortfeasors combine, concur, or coalesce to produce an injury, each tortfeasor's act is considered to be the proximate cause of the injury, . . . and each tortfeasor is jointly and severally liable for the entire injury."  *Gen. Motors Corp. v. Edwards*, 482 So. 2d 1176, 1195 (Ala. 1985), *overruled on other grounds*, *Schwartz v. Volvo N. Am. Corp.*, 554 So. 2d 927 (Ala. 1989), *as recognized in Haddan v. Norfolk S. Ry. Co.*, No. 1190976, 2022 WL 333879, at *3 (Ala. Feb. 4, 2022).

In addition, "in an action against two defendants for damages allegedly caused by the combined or concurring negligence of the defendants, it is not necessary to show negligence of both defendants in order for recovery to be had against one shown to be negligent."  *Northeast Ala. Reg'l Med. Ctr. v. Robinson*, 548 So. 2d 439, 441 (Ala. 1989).  *Robinson* illustrates the latter point.  There, a surgical sponge was left in a patient after a hysterectomy, and the jury found the hospital, but not the surgeon, liable for the surgical nurses' negligence in failing to properly count the surgical sponges.  *Id.* at 440.  The court held that there was "ample testimony to support the jury's apparent conclusion that the nurses' negligence was the sole proximate cause of Mrs. Robinson's injuries" and that the surgeon had not breached

the standard of care in relying on the surgical nurses' improper sponge count. *Id.* at 441–42.

Although the parties have not cited a factually analogous case with similar claims, and independent research did not turn up any such authority, *Robinson* raises concerns for traveling under the combined-and-concurring-acts theory of causation. It is true that the act of negligent hiring (or supervision or training or retention) and the act of negligent operation of the tractor-trailer are independent acts and that, if proven, resulted in the same injuries to Plaintiffs (bodily injuries and property damage, as alleged). In one sense, Mega's and Mul-Ty's negligence has to concur with Morgan's negligence because, on the claims against Mega and Mul-Ty, Plaintiffs will have to convince the jury that, not only was Morgan negligent on the complained-of occasion, but also that his negligence concurred with the negligence of Mega and Mul-Ty in their hiring, supervision, training, and retention of Morgan. *See Jones Exp., Inc. v. Jackson*, 86 So. 3d 298, 305 (Ala. 2010) (holding that "implicit in the tort of negligent hiring, retention, training, and supervision is the concept that, as a consequence of the employee's incompetence, the employee committed some sort of act, wrongdoing, or tort that caused the plaintiff's injury").

However, at the same time, *Robinson*'s premise that "it is not necessary to show negligence of both defendants in order for recovery to be had against one shown to be negligent" does not hold true as to the claims against Mega and Mul-

Ty.  *Robinson*, 548 So. 2d at 441.  To find Mul-Ty or Mega liable for negligent hiring (or supervision or training or retention), the jury also must find that Morgan was negligent based upon his incompetent driving.  In other words, if the jury finds that Morgan was not negligent, then no basis lies for finding that Mega and Mul-Ty were negligent.   The parties' arguments have not satisfactorily resolved this quandary.

Although unanswered questions surround whether the evidence can travel under the theory of combined and concurring negligence, the court finds that the better path is to decide after the development of factual context at trial.  At trial after the close of Plaintiffs' case, Defendants may reassert any objection to a combined and concurring negligence theory for proving causation.  Summary judgment on Count 5 will be denied.

## V.  CONCLUSION

On August 24, 2020, Morgan's and Abbott's worlds collided on Highway 231 in Pike County, Alabama.  Their next collision will be in the courtroom.

It is ORDERED that Morgan's motion for partial summary judgment (Doc. # 60) is DENIED.

It is further ORDERED that Mega's motion for summary judgment (Doc. #54)—which Mul-Ty joins (Doc. # 59)—is GRANTED in part and DENIED in part as follows:

(1)     GRANTED on the claims against Mega and Mul-Ty in Counts 3 and 4 alleging negligent and wanton policies and procedures;

(2)     GRANTED on the claims against Mega and Mul-Ty in Counts 3 and 4 alleging wanton hiring, training, supervision, and retention;

(3)     DENIED on the claims against Mega and Mul-Ty in Counts 3 and 4 alleging negligent hiring, training, supervision, and retention; and

(4)     DENIED on the claims in Count 5 alleging combined and concurring negligence.

This action proceeds to trial on the negligence and wantonness claims against Morgan in Counts 1 and 2; the negligent hiring, training, supervision, and retention claims against Mega and Mul-Ty in Counts 3 and 4; and the combined and concurring negligence claim in Count 5.

DONE this 8th day of March, 2023.

                                    /s/ W. Keith Watkins
                                    UNITED STATES DISTRICT JUDGE