IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TOURI EUGENE ABBOTT and PHILLIP'S AUTO RECYCLING & SALVAGE, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 2:20-CV-776-WKW [WO] |
| MEGA TRUCKING, LLC, PATRICE LUMUMBA MORGAN, and MUL-TY VIBES, INC., | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendants' Second Motion *in Limine*. (Doc. # 109.) Plaintiffs filed a Response in Opposition (Doc. # 125), and Defendants submitted a Reply (Doc. # 130). Defendants move the court to exclude (1) the treating physicians' testimony on the cause of Plaintiff Touri Eugene Abbott's injuries; (2) the treating physicians' testimony on expected future medical treatment; and (3) the medical records on charges billed for services. (Doc. # 125 at 1–11.) For the reasons to follow, the motion *in limine* will be granted in part and denied in part.

**A.  Standard of Review**

On a motion in *limine*, the movant must show that the evidence is "clearly inadmissible on all potential grounds." *United States v. Gonzalez*, 718 F. Supp. 2d

1341, 1345 (S.D. Fla. 2010), or that "the mere mention of [the evidence] would be so prejudicial that it would deprive a party of a fair trial." *Puldon v. Am. Med. Sys., Inc.*, No. 20-CV-60411-WPD, 2021 WL 9697683, at *1 (S.D. Fla. May 17, 2021). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *Gonzalez*, 718 F. Supp. 2d at 1345.

**B.     The Treating Physicians' Opinions on the Cause of Mr. Abbott's Injuries**

Defendants move to exclude testimony from Mr. Abbott's treating physicians concerning the cause of Mr. Abbott's injuries. The treating physicians are: (1) Dr. Leo Chen; (2) Dr. Lee Kelley; and (3) Dr. Jeremiah Maddox. (Doc. # 109 at 3–4.) During his deposition, Dr. Chen affirmed that "to a reasonable degree of medical certainty, an accident such as this could cause th[e] kind of spinal injury" that Mr. Abbott suffered. (Doc. # 109-1 at 2.) Similarly, during his deposition, Dr. Kelley testified that "[i]t is [his] opinion that Mr. Abbott sustained L4-5 and L5-S1 disc herniations in the collision of August 24, 2020." (Doc. # 109-2 at 2.) In addition, while Dr. Maddox has not been deposed, Defendants expect that he will offer similar testimony about the cause of Mr. Abbott's injuries. (Doc. # 109 at 3–5.) Defendants argue that this causation testimony from Mr. Abbott's treating physicians is expert testimony and that, because Plaintiffs did not disclose the treating physicians as expert witnesses, they cannot testify about medical causation. Defendants also point

2

out Plaintiffs' past concession that "the treating physicians are not qualified to testify as to causation for an 18-wheeler collision." (Doc. # 45 at 6.)

Plaintiffs respond that they have not offered Mr. Abbott's treating physicians as expert witnesses and that the treating physicians evaluated the cause of Mr. Abbott's injuries as part of their treatment of him. They contend that the treating physicians' opinions on medical causation are admissible lay testimony. Plaintiffs also point out that Mr. Abbott's treating physicians are not opining on the cause of the accident (namely, whether Mr. Abbott or Defendant Patrice Morgan was at fault), but rather on the cause of Mr. Abbott's injuries. (Doc. # 125 at 4–5.)

The issue is whether the treating physicians' testimony on medical causation are lay or expert opinions. Admissible lay testimony is "(1) 'rationally based on the witness's perception,' (2) 'helpful to clearly understanding the witness's testimony or to determining a fact in issue,' and (3) 'not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.'" *Lebron v. Sec'y of Fla. Dep't of Child. & Fams.*, 772 F.3d 1352, 1372 (11th Cir. 2014) (quoting Fed. R. Evid. 701). Rule 701 "is designed to prevent parties from 'proffering an expert in lay witness clothing' by ensuring that 'testimony that is actually expert' passes the strictures of Rule 702." *Id.* (citing Fed. R. Evid., advisory committee's note to 2000 amendment).

In *Williams v. Mast Biosurgery USA, Inc.*, cited by Defendants, the Eleventh Circuit explained:

> The testimony of treating physicians presents special evidentiary problems that require great care and circumspection by the trial court. Much of the testimony proffered by treating physicians is an account of their experience in the course of providing care to their patients. Often, however, their proffered testimony can go beyond that sphere and purport to provide explanations of scientific and technical information not grounded in their own observations and technical experience. When such a situation presents itself, the trial court must determine whether testimony not grounded in the physician's own experience meets the standard for admission as expert testimony. As we pointed out in *United States v. Henderson*, 409 F.3d 1293 (11th Cir. 2005), distinguishing between lay and expert testimony is an important one; arriving at an appropriate conclusion requires that trial courts be vigilant in ensuring that the reliability requirements set forth in Rule 702 not "be evaded through the simple expedient of proffering an expert in lay witness clothing." *Id.* at 1300 (quoting Fed. R. Evid. 701 advisory committee's note to the 2000 amendment).

644 F.3d 1312, 1316–17 (11th Cir. 2011) (internal footnotes omitted). The court continued:

> [In *Henderson*,] [w]e cited with approval the decision of our colleagues in the Tenth Circuit in *Davoll v. Webb*, 194 F.3d 1116 (10th Cir. 1999). In *Davoll*, the Tenth Circuit wrote that "[a] treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party." *Id.* at 1138; *see also Henderson*, 409 F.3d at 1300 (citing *Davoll*). We also noted with approval the Tenth Circuit's decision in *Weese v. Schukman*, 98 F.3d 542 (10th Cir. 1996), that a physician may offer lay opinion testimony, consistent with Rule 701, when the opinion is "based on his experience as a physician and [is] clearly helpful to an understanding of his decision making process in the situation." *Id.* at 550; *see also Henderson*, 409 F.3d at 1300 (citing *Weese* with approval). These cases make clear that, when a treating physician's testimony is based on a hypothesis, not the experience of treating the patient, it crosses the line

4

>from lay to expert testimony, and it must comply with the requirements of Rule 702 and the strictures of *Daubert*.

*Id.* at 1317–18.

There is persuasive authority in the Eleventh Circuit that a treating physician who assesses the cause of injury during the patient's treatment does not have to be qualified as an expert and is not subject to the expert disclosure rules. *See Torres v. Wal-Mart Stores E., L.P.*, 555 F. Supp. 3d 1276, 1297 (S.D. Fla. 2021) ("Dr. Cameron formed his opinion—that Torres injured his back during a recent slip-and-fall—based on his extensive treatment of Torres's injuries. . . . This is unsurprising. Treating physicians, after all, commonly consider the cause of any medical condition presented in a patient." (citation and internal quotation marks omitted)); *Rementer v. United States*, No. 8:14-CV-642-EAK, 2015 WL 5934522, at *5 (M.D. Fla. Oct. 9, 2015) ("Because a treating physician considers not only the plaintiff's diagnosis and prognosis, opinions as to the cause of injuries do not require a written report if based on the examination and treatment of the patient. Treating physicians commonly consider the cause of any medical condition presented in a patient, the diagnosis, the prognosis, and the extent of disability, if any, caused by the condition or injury." (citations omitted)); *Mueller v. Chugach Fed. Sols., Inc.*, No. 12-CV-624-LS, 2014 WL 2891030, at *4 (N.D. Ala. June 25, 2014) (finding that the treating physician's "opinion regarding the cause of death [was] based upon his personal experience of treating [the deceased]" and was "fact testimony," not expert

testimony (citing *Williams*, 644 F.3d at 1317)); *Kondragunta v. Ace Doran Hauling & Rigging Co.*, No. 1:11-CV-1094-JEC, 2013 WL 1189493, at *10 (N.D. Ga. Mar. 21, 2013) ("When a treating physician testifies regarding opinions that have been formed and based on observation made during the course of treatment," the opinions are not subject to the expert disclosure requirements of Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure); *Donaldson v. United States*, No. 6:09-CV-1049-JA, 2011 WL 1806990, at *1 (M.D. Fla. May 11, 2011) (ruling that the plaintiff "[would] not be precluded from presenting testimony from Dr. Montoya on the issue of causation so long as Dr. Montoya's opinion was formed during the course of examination and treatment").

All parties agree that the treating physicians may offer lay testimony about their treatment of Mr. Abbott after the August 24, 2020 accident. The parties disagree as to whether the treating physicians' testimony about medical causation relies on their experience while treating Mr. Abbott (Plaintiffs' position) or whether it crosses the line into expert testimony (Defendants' position).

Based upon careful consideration, there is a sufficient factual basis to conclude that Dr. Kelley acquired his opinion through his treatment of Mr. Abbott. In his affidavit, Dr. Kelley, who confirms that he was not retained as an expert witness, says the following:

> When treating a patient who is seeking medical treatment for injuries caused by trauma, it is important, and [it is] the standard of medical care, to ask, inquire, and seek information about the cause of the injury. This information is an essential and necessary part of treating the patient.

(Doc. # 125-1 at 1 (alteration added).)  He continues:

> In the course of my treatment of Mr. Abbott, I inquired and determined the cause of his injury in the course of my evaluation, diagnosis, and treatment.  I reviewed his medical records from other physicians as well as test results and MRI images.  I inquired about this medical history and was made aware of a wreck involving a semi-truck, wherein Mr. Abbott sustained his injury.  As part of my care and treatment of Mr. Abbott, I determined that he had obvious traumatic disc herniations caused by the wreck.  This determination and knowledge was not sought for the purpose of litigation, but was solely for the purpose of diagnosing and treating my patient.

(Doc. # 125-1 at 2.)

Dr. Kelley's testimony about the cause of Mr. Abbott's traumatic disc herniations was based on his experience as a physician and the information he acquired through his treatment of Mr. Abbott, including his "observations based on personal knowledge" of Mr. Abbott. *Williams*, 644 F.3d at 1317.  This information included a review of Mr. Abbott's medical history.  Based on Dr. Kelley's affidavit, discerning the cause of Mr. Abbott's injury better informed his treatment of Mr. Abbott and was within accepted standards of medical care.  In addition, his attestation on causation is not couched as a hypothesis nor was it rendered for litigation.  *Cf. Henderson*, 409 F.3d at 1300 (treating physician's "statement about the cause of the injury was, as she admitted, a 'hypothesis,'" and "the ability to

7

answer hypothetical questions is '[t]he essential difference' between expert and lay witnesses"). His testimony falls within the boundaries of lay witness testimony. His opinion on the cause of Mr. Abbott's injuries is rationally based on his perception; it is helpful in understanding a fact at issue; and it is not based on knowledge covered by expert opinions. *See* Fed. R. Evid. 701.

Defendants rely upon *Wilson v. Taser International*, where the plaintiff opposed summary judgment by obtaining an affidavit from his treating physician on the cause of the plaintiff's injuries. 303 F. App'x 708, 710 (11th Cir. 2008). The Eleventh Circuit explained that "the cause of [the plaintiff's] injuries was not needed to explain [the physician's] decision making process, nor did it pertain to [the plaintiff's] treatment." *Id.* at 712. Here, the facts are different. Dr. Kelley's affidavit indicates that Dr. Kelley formed his opinion on the cause of Mr. Abbott's injuries by applying his specialized experience as a physician to the information learned about Mr. Abbott in the course of treatment and as observed by him. Based on the affidavit of Dr. Kelley and the otherwise limited factual context, Defendants have not shown that Dr. Kelley's testimony on the cause of Mr. Abbott's injuries is "clearly inadmissible." *Gonzalez*, 718 F. Supp. 2d at 1345. Defendants' Second Motion *in Limine* will be denied as to Dr. Kelley's testimony on medical causation.

As to the medical causation opinions of Dr. Chen and Dr. Maddox, the Second Motion *in Limine* also will be denied. The limited deposition excerpts in the record

are insufficient to determine whether these treating physicians relied on information obtained outside the course of treatment to form their opinions on medical causation. If their testimony reveals that their opinions on the cause of Mr. Abbott's injuries were not derived from Mr. Abbott's medical care or that they did not have information related to the cause of injuries during Mr. Abbott's treatment, Defendants can object at trial.

C.     **Dr. Kelley's and Dr. Chen's Opinions About Future Surgical Procedures for Mr. Abbott**

Defendants also move to exclude Dr. Kelley's and Dr. Chen's opinions that Mr. Abbott may require a future surgical procedure. (Doc. # 109 at 9.) The facts are too sparse to determine whether these opinions go beyond the scope of Dr. Kelley's and Dr. Chen's treatment and care of Mr. Abbott. The Second Motion *in Limine* will be denied as to this argument. However, after factual development at trial, Defendants may renew their objections to these opinions if appropriate.

D.     **Medical Records on Billing**

Finally, Defendants move to exclude Mr. Abbott's medical billing records. (Doc. # 109 at 8–9.) Defendants argue that, under Alabama law, medical billing records are not "matter[s] of common knowledge, but rather are matters for expert opinion." (Doc. # 109 at 8.) Defendants cite several cases, including *Birmingham Amusement Co. v. Norris*, in which the Alabama Supreme Court held that "what

9

would be a reasonable and proper charge for the surgical and medical attendance had by plaintiff was not a matter of common knowledge, but was clearly a matter for expert opinion." 112 So. 633, 636 (1927); *see also Johnson v. ABF Freight Sys., Inc.*, No. 2:18-CV-1835-MHH, 2021 WL 4860412, at *4 (N.D. Ala. Apr. 23, 2021) ("The complexities of medical billing are beyond the understanding of the average layperson." (footnote omitted)); *Jackson v. Brown*, 268 So. 2d 837, 841 (Ala. Civ. App. 1972) (noting that "testimony of reasonableness in regard to charges for surgical, medical or hospital bills does not concern subject matter of common knowledge, but that testimony of reasonableness in regard to charges for surgical, medical or hospital bills is a matter for expert opinion"). Because Plaintiffs do not have an expert to testify as to the reasonableness of the medical charges, Defendants move to exclude the medical billing records.[1]

Plaintiffs indicate that they intend to offer the records of Mr. Abbott's medical expenses and bills through the custodian of those records (ML Healthcare). (Doc. # 125 at 7.) They argue that the "medical expenses/bills for treatment [are] relevant" on the issue of damages and qualify as hearsay exceptions under Rules 803(4) and 803(6) of the Federal Rules of Evidence. (Doc. # 125 at 6–7.) That much might be

---

[1] Defendants initially frame their argument to say that opinions about the "reasonableness and necessity of medical treatment" must come from an expert witness. (Doc. # 109 at 8.) But the cases Defendants cite refer to the reasonableness, not the necessity, of the amount of the charges for the medical treatment rendered. The analysis proceeds under the latter framing.

10

true; however, Plaintiffs' arguments do not address Defendants' point that Plaintiffs have not retained an expert to testify that the charges for medical services themselves are reasonable. Nor do Plaintiffs rebut the caselaw cited by Defendants.

Plaintiffs admit that they do not have an expert witness to testify as to the reasonableness of the medical charges. While the Eleventh Circuit has said that it "do[es] not believe that Alabama law demands expert testimony—to the exclusion of all other forms of proof—to show the reasonableness of medical costs," *Alphonso v. Esfeller Oil Field Constr., Inc.*, 380 F. App'x 808, 809 (11th Cir. 2010), Plaintiffs have not shown that an exception to the rule requiring expert testimony to prove a medical charge's reasonableness applies here. For example, in *Alphonso*, the absence of expert testimony was not fatal because the state's workers' compensation act promulgated a payment schedule and capped the charges that medical providers could charge for the plaintiff's treatment. 380 F. App'x at 809. Defendants' Second Motion *in Limine* will be granted to the extent that the medical records (without the aid of expert testimony) are inadmissible to prove the reasonableness of Mr. Abbott's medical charges.

**E.  Conclusion**

Accordingly, it is ORDERED that Defendants' Second Motion *in Limine* (Doc. # 109) is DENIED in part and GRANTED in part as follows:

(1)     DENIED as to Dr. Kelley's testimony on the medical cause of Mr. Abbott's injuries;

(2)     DENIED as to the opinions by Dr. Chen and Dr. Maddox on the medical cause of Mr. Abbott's injuries and on expected future surgical procedures;

(3)     GRANTED as to the medical billing records because, absent expert testimony, the medical billing records are inadmissible to prove the reasonableness of Mr. Abbott's medical charges.

DONE this 20th day of March, 2023.

                                                /s/ W. Keith Watkins
                                        UNITED STATES DISTRICT JUDGE